You will probably, because most of you have already done it, please approach the podium and tell us your name and who you represent. Tom Burton Ring on behalf of Ernest Cotton. Good morning. Mike Gilman on behalf of City Mortgage Inc. Good morning, Your Honor. Chuck Lowe on behalf of Marquette. Thank you. Are you both going to be arguing? No, Your Honor. Mr. Gilman will be arguing. Okay, great. Thank you. Whenever you're ready, Mr. Ring. Thank you. And the appellant should save a few minutes for rebuttal. You probably heard me say we're not strict clock watchers, but please try to get to your strongest argument first so that we can move this along. Good morning. May it please the Court, Burton Ring on behalf of Ernest Cotton. This is a case about honest and well-directed efforts to try to serve Mr. Cotton. It's just not about the number of attempts the purported process service actually made at two different locations, but it's really their inquiry that they did not do in any of their affidavits or any of the evidence presented before the trial court. As this Court ruled in the Equity v. Misolo case five, six years ago now, it must be honest and well-directed efforts to locate the would-be defendant and really look at different things on a case-by-case analysis. In this particular case, the affidavits of Mr. Neville, the attorney who signed the affidavit for publication, really doesn't say anything. The two process servers, one process server from Amicus or Firefly, said he went to one address and there were no doorbells there and Mr. Cotton's name was not even on the mailbox. And he went there, I don't know, about ten times, he claims. We don't know from his affidavit at all if he knocked on a door, whether there's no doorbells there, that he even got out of his car, or what he actually did for any kind of inquiry to find Mr. Cotton at that one address. At the other address, and Mr. Cotton presented at the lower court three different affidavits conflicting with that affidavit of the Firefly investigator. Can you talk about that? That issue is interesting to me, the issue of the conflicting affidavits. That's your third argument, but I'd like you to talk, spend some time on that. Well, in this case, the lower court judge did not offer any evidentiary hearing. It was up on two different dates. Anybody ask for one, counsel? Anyone demand or request an evidentiary hearing on the affidavits? Yes. Yeah, Mr. Cardinal, the attorney in the lower court did. He asked for the, I brought the transcripts with me, he did ask for a hearing. I'd like to know where that is because I couldn't find it in the briefs. You don't have to look at it right now, but at some point. In the motion for reconsideration, they also asked for an evidentiary hearing in that motion, did they not? Yes, and I was the attorney. I came at that point in the lower court and I asked for an evidentiary hearing. That was my prayer for relief, so we discussed that in the motion to reconsider. So that was well thought out in all the lower court practice. The lower court's position was not really clear why they did not give a evidentiary hearing, but you have the two affidavits from the neighbors saying that there is a mailbox there and Mr. Cotton lives there and there is a doorbell there. So they directly conflicted with the Firefly's affidavit. And at that point, looking at conflicting statements, just from those two, there should have been an evidentiary hearing. In the motion, did you, there was a photograph, allegedly a photograph of the doorbell or the area showing the mailbox with the two names on it or the doorbell. Was that attached to the motion for the evidentiary hearing? Yes, that was. Before the judge? Okay. Interestingly enough, when they filed the foreclosure case, you have to designate what kind of case this was. They actually designated this case, the mortgage company, as a single family. And as we know now, that it was a five-unit apartment building. So that alone, that's the mortgage company's information they put down. They easily could have found this was a five-unit building rather than a single family. So the record is clear and abundant with a lot of conflicting statements within the statements by the plaintiff, Citibank, and also by the defendants about their affidavits they have themselves and also the affidavits that he has with the two other neighbors. So if you're looking at the total number of attempts, and this is different, you have the attempts, which is one aspect of the equity directions, and you have the inquiry. Even if you look at the total number of attempts, the fact that he went out ten times without even ringing a doorbell, knocking on a door, because we don't have any evidence in the record concerning what he did. He actually even went out of his car. So you can even ignore all those efforts, what he did at the second place without a doorbell. But here it's a requirement that the judge should look at, the lower court judge should look at, the affidavits because strict compliance with this service by publication must be followed strictly. And from a casual reading of all the affidavits, it was nothing there. No. This court has already looked at the, and there's another indication about the Firefly information. This court, I know, was on public decision, and Justice Connors was not part of that panel, but in a recent case just about three weeks ago, Justice Harris and Justice Cunningham were involved. They looked at the statement on the affidavit of the process server, and you relied on that. And you said, Mr. Eskra, a Firefly investigation was appointed by the court. So you placed reliance on that statement and their affidavit. I know it was unpublished, and Your Honor wasn't part of that panel, but that's another conflicting statement in the affidavits by the process servers. They weren't employed by amicus professional legal service at that point. They were statements, they were employed by Firefly. Even looking a little. The Supreme Court doesn't allow us to use unpublished orders as precedents. I know. Just mentioning it is for what it's worth. Right. And was this issue raised in the trial court, the Firefly versus amicus? We raised that in our motion to reconsider. I know it wasn't raised earlier, but it was raised in our motion to consider. So the answer is yes, it was. The other interesting aspect. There was an order granting Firefly to do the service on August 19, 2009. Now, the events that you're talking about, did that take place after August 19? No, the service was made in August, earlier in August. So prior to that order, they were operating under the order appointing amicus. Yes. Yeah, that was good until August 31st, that order. But later on, you have a statement by one of the investigators that said, per the directions of Firefly, when he read it, he said he was an employee of amicus. So within his own affidavit is a conflicting statement. And so the trial court at that point should have decided, you know what, there's a lot of conflicting statements in their own affidavits. There's a lot of conflicting affidavits among the plaintiff's statements themselves and then you look at the opposite, Mr. Cotton's affidavits and the two other affidavits by Ms. Cotton and Ms. Nicole, I believe her name, Nicole Johnson. And so at that point, it was incumbent upon the lower court to grant an evidentiary hearing and then decide if there was due inquiry properly made. Here in this case, there's no evidence at all of any due inquiry made. And if they would have made some due inquiry, they would have found out some easy things. Just like in the Equity Nassau case, that was an eviction case. And the landlord certainly knew, had information about the application where the defendant lived because that was something she needed to get to enable her to get the apartment. Here is the same thing. The mortgage company has information about where Mr. Cotton worked, all information about his assets and things like that. So they could have easily went to the firehouse. That's public information, too, as well as, and they admit that in their briefs, they knew where he worked. Ms. Ring, they went ten times, 19 times total, ten times to one residence and nine times to another. That's a lot of attempts, according to just any standard. You know, why isn't that due inquiry? Well, due inquiry and the diligence are separate. Diligence, I could accept Your Honor's statement that diligence of going out 19 times, although we're going to question the ten times at one place. Why isn't it diligence then? There are a lot of attempts. Well, we don't know what he did on the other place. He didn't inquire. He inquired on one neighbor, and the neighbor conflicted with that. They could have went to the job. They could have asked his attorney. They already accepted the power of attorney in negotiating the loan modification. They could have said, you know, when is your client available? We need to serve him. So you're saying that although there may have been diligence in going out 19 times and you're not even sure about that, they didn't make any due inquiry to determine whether they were effectively going to the right place or going to a place that would be effective in effectuating service. Is that your argument? Well, that's one of the arguments. But to go to the same place over and over again, for instance, would be if you know somebody's working and you go between 9 and 5 to try to serve them. How would they know he's working? I mean, you know. This is a little bit more peculiar because he's a firefighter and he doesn't have the 9 to 5 hours. And they knew that. They admit that in their briefs. I mean, the fact that he was a firefighter when he applied for the mortgage doesn't necessarily mean he's a firefighter when this is happening. I mean, you make that argument in your brief, but I'm not sure that you can impute that knowledge to, you know, to the plaintiff. How would they know that? Two ways. If they would have done their due diligence, for instance, if they would have went to the courthouse or even go on the Dorothy Brown website, they would have looked at and found five cases that Mr. Cotton has a defendant on before that date. For instance, the City of Chicago sued Mr. Cotton and got a garnishment order exactly at that same time. And I can give you the site of that. And so the City of Chicago sued him. They got the garnishment. Are they required to, I mean, It sounds like you're asking them to do certain things that are a little bit outside the usual bounds. So you're saying whatever it takes to avoid serving him by publication, that's what they should have done. No, all the cases. Equity says you should check employment records, check court records. This is what all the cases, the Bank of New York says the same thing. All the cases on this point. What about the Volkert case that's cited by Marquette Bank? It says that they didn't have to attempt to serve him at his place of work, and publication was appropriate. Can you answer that case?  Volkert, V-O-L-K-E-R-T. Is that the plaintiff? Well, anyway, they cite it in their brief, and they say that the ruling was that the court didn't have to serve someone at their place of employment, that publication was appropriate. It's not serving him at the job. It's because it's really finding out what is the best place and time to serve, and that's the due diligence issue. That's the inquiry issue. Where can I find you to serve you? When does it stop, though? Where does due diligence stop? Well, sure, there's no bright line test, but the cases say each case is by itself, and you have to look at the facts of each case. In this case, because he's a firefighter, looking at the courthouse records, just going to Dorothy Brown and looking at her website, you would see that he was named in a garnishment. You could easily find from about five minutes' worth of investigation that he's working at the fire station he's looking at, and call the firehouse, we put that in our briefs, find out which station he's at, talk to him on the phone, talk to his attorney. Where's the best spot I can serve him at? You have his attorney's name. You should be talking to his attorney anyways, and they were. So these are things that you're doing anyways as part of your job. And sure, in this case, you can always say how much does it end, but these are not words in a vacuum. The court uses the word such as spirited. You should use a spirited investigation for due diligence. These are the words the court uses from time to time. There's no spirited investigation. They did nothing. About the issue of power of attorney, I'm not sure how that all plays here. You're saying that there was an attorney who was a power of attorney on his account? What does that mean? Well, Mr. Wildermuth served the power of attorney saying city mortgage, talked to my attorney, and they accepted that. A power of attorney is a document, and that, I don't see it in the record either. A document was served in the bank saying that I have a power of attorney by Mr. Cotton? Yes. So an attorney said I'm working on the loan modification for Mr. Cotton. Talk to me. That's not what a power of attorney is, though, is it? You're saying I'm a lawyer that's working with him on his loan. Yes, and they gave the city mortgage accepted that. They acknowledged that in a letter. And so the city mortgage attorney or Mr. Neville should have at least called his attorney up and said, you know, where can I serve your client? Where is he available? You know, asking him some questions. Or are you willing to accept service of process? There's a waiver. Or maybe do a 203.1 service. They can do that too. Many times the lower courts allow a 203.1 service on the attorney, and especially this case. We don't know that because they never tried to even make that motion. If it was denied, it would be something else. They could have said, you know what, Mr. Wildermuth is doing the loan modification. He's aware of the status of the loan. Can we serve Mr. Wildermuth as service of process? And the lower court might have said, yes, it seems to be fair. But they didn't do that. Let's say they did serve him. I mean, we don't know that he's an attorney. Again, I'm not sure what this term power of attorney is being used at here. Was he his lawyer? I don't know. If they served his lawyer, is that service on him if he didn't agree to it? No, they would still have to serve him. But they could have at least talked to Mr. Wildermuth to find out when is your client available or can we serve you? Many times that happens. The attorney will say, yeah, we will accept service. Or, you know, he's available at the firehouse on Tuesday through Friday because he's not working this week because he already worked his 35 hours last week. So he could have given some information. But the issue is not what they would have learned from talking with him, but they didn't even talk to him at all. They didn't check the court records to find anything out. And they would have learned that he's going through a divorce and all the asset and employment information are in the divorce records. And the divorce is still going on. So they could have asked his divorce attorneys. They could have asked the other side. They could have done a number of things by simply making a search of the court records. And all the cases saying conducting a due diligence, you must look at court records. They didn't do that. In this case, the court records were abundant. And answering your first question, where does it end, if there was no court records, it could have said no court records, we didn't have to do anything. But here there's a lot of court records which would have revealed much information necessary to really do your due diligence and really try to serve Mr. Cotton, which they didn't do. Can you wrap up, Mr. Reed? I'm sorry? Please wrap up. Okay. The big issue here is that there was no inquiry made at all. And there was conflicting affidavits. And the lower court should have allowed an evidentiary hearing. And for all these reasons, we're asking that this court reverse the lower court and reverse our amendments. Thank you. Thank you. We'll have a few minutes for rebuttal. Thank you. Good morning. May it please the Court, Michael Gilman on behalf of City Mortgage, Inc. Say your name clearly again. Oh, I'm sorry. That's a recording device. Okay. Michael Gilman for City Mortgage, Inc. The record in this case shows that City Mortgage, Inc. strictly complied with Section 2606A of the Illinois Court of Civil Procedure, what I've called the publication statute. That statute requires that to effect service upon a defendant in a case involving real estate, among other matters, that an affidavit showing the defendant on due inquiry cannot be found so that process cannot be served upon him or her in stating the place of residence of the defendant. Mr. Gilman, what about the conflicting affidavit? I'd like to talk about that. Mr. Ring spent some time on that, and that's kind of interesting. There's a considerable difference of opinion regarding what your process service said and what the defendant's affidavit states, and what about that? Would that be an appropriate reason for the judge to grant the motion for an evidentiary hearing? I would say no for two reasons. First of all, in order to go into an evidentiary hearing, I think that the affidavit of Mr. Cotton has to, in essence, set forth facts which show that he could have been located upon a diligent inquiry. And if you look at the affidavit that Mr. Cotton filed, he did not state that. Why not? Why did he say that? Why do you think the affidavit was insufficient? Because he stated in the affidavit that when the process server attempted to serve me, a person could have been on vacation or a person could have been unavailable. He did not state that he was unavailable. He did not state that he was at work. He did not state any facts to support why the process server could not locate him. The affidavit also stated some other things. What about the statement regarding the fact that his name was on the door outside the building? What about that? I don't believe those discrepancies or issues are sufficiently material to warrant an evidentiary hearing. You don't? No, I do not. If your process server says there is no name for Cotton on the bell outside the building but Cotton presents an affidavit saying, yeah, there is a name, there is a bell showing that I live there, you don't think that that's a big conflict? No, I do not. Because I think the material fact is whether the process server sought to serve him at that address. And if the discrepancy. Well, your process, there are two residences, and you have affidavits saying that there were 19 attempts, 10 at one and 10 at another. So obviously one of the process servers attempted to serve him at the address where they said there was no name on the bell and he presented a sworn statement saying that there was, as well as a statement of a neighbor saying that there was. You don't think that that's a substantial conflict between the two affidavits? I think there's a conflict with the affidavits, but I don't think it's material to the issue. Well, how would the judge ferret that out without an evidentiary hearing? Because I don't think it's material to the issue of whether city mortgage exercised due diligence in trying to locate, to do inquiry to locate the residences. Well, they're arguing that there is no way to know if they even went to the right place, for example, if they describe a single-family dwelling when the dwelling is really a five-unit building. What about that? Is that a conflict? Well, I think there's separate issues. One issue is did city mortgage exercise due inquiry to locate his residences? And the affidavits identify... Well, how can you tell that if the affidavit describes a residence that's not the residence where he lives? How can you tell whether that's true? They may have been going to the wrong place. How would the judge find that out without an evidentiary hearing where he gets to ask the parties who actually attempted service all of the questions that you would expect them to ask? How would you do that without an evidentiary hearing? Well, I mean, an evidentiary hearing would resolve those conflicts. My position is that that issue, the process server went to a building bearing that residential address. Mr. Cotton admits that was his residence. And I think that's the issue, is whether city mortgage duly inquired to locate the residence of the defendant. What about the question of the big party in the backyard where Mr. Cotton claims there was a large, noisy birthday party going on in the backyard at the exact date and time that the process server claims he attempted to serve him? What about that? Is that a conflict? I do not believe it's a conflict. Because that assumes that the process server would have known and heard it was a loud party, whatever. Well, how would the judge know that without an evidentiary hearing? I mean, even if there was a party. I mean, there are so many issues in that case, in that question, because That's my point. There are so many issues in this case that are not lining up. And the statute, you know, strict construction. Serving someone by publication is not something that the statute does likely or that the courts take likely. So that's why they expect plaintiffs to go the extra mile. And I'm asking you whether you think that the attempts that were made here went the extra mile before the judge allowed publication and then refused to grant an evidentiary hearing. That's what I'm asking. I don't believe that the issues raised by Mr. Cotton's affidavits required an evidentiary hearing. Okay. I think that the record shows that City Mortgage determined Mr. Cotton's two addresses, Mr. Cotton admits those were his two addresses. There were 19 attempts, 10 to 9, to serve him at those addresses. The attempts were weekends, weekdays, a.m. during the midday and evening. I believe that satisfies the requirements of the publication statute. Okay. What about Mr. Ring's comment with respect to attempting to locate him through Mr. Wildemuth, who was the lawyer on the mortgage? Not necessarily that he was his lawyer for this, but there was correspondence between your client and Mr. Wildemuth at some point indicating that Mr. Wildemuth represented Mr. Cotton. Any inquiry made with Mr. Wildemuth such as where's your client, where does he live, we want to serve him? Did anybody do that? Well, the record does not show that there was any contact with Mr. Wildemuth by City Mortgage with respect to the service of process issue. However, Your Honor, Connors referenced the Volper case. In the Volper case, the court said that, to quote, this is not a case where plaintiff failed to make diligent inquiry to ascertain defendant's place of residence as required by the publication statute. City Mortgage knew Mr. Cotton's residence. That satisfies the due inquiry requirement of the publication statute. There's a whole lot of cases. All of that is true. However, what about, you still have to get around the issue of all of that is true until Mr. Cotton then files an affidavit saying to the judge, we want an evidentiary hearing because the statements in the affidavit of the plaintiffs are not true or inaccurate. What about that? I mean, how do you get around that? Because I believe in the affidavit he did not sufficiently state that he could have been served, that City Mortgage could have located him. You compare that affidavit to the affidavit that was filed in the Solo case, I believe it's called, where the defendant said that I resided at that premises at the time the service was attempted. Between 8 o'clock and 6 o'clock I was at work, or 8 to 8 o'clock I was at work, and those were the specific hours where service was attempted on the defendant. In our affidavit, in the affidavit Mr. Cotton filed, all he said was someone could have been unavailable or could have been out of town. There's nothing specific to state that he could have been located at that residence to indicate somehow that City Mortgage did not actually attempt to serve him at those addresses. Counsel, can I ask you a procedural question? Yes. Going back to what I asked Mr. Ring. There was a foreclosure and a judicial sale ordered, correct? Correct. And then there was a motion filed to vacate the judgment of foreclosure and the judicial sale and quash the service by publication, correct? Correct. In that motion that was filed by Mr. Cotton, I'm looking at the prayer for relief, and he's asking for the judgment of foreclosure to be vacated, service of process against Mr. Cotton be quashed, and the judicial sale be vacated. Those are the three things he asked for in his prayer for relief, and whatever relief the court deems proper and just. Those are the four things I should say that we asked for. That's what he's asking for in his prayer, and he attaches an affidavit to that motion, correct? He says there's an affidavit attached. I don't believe there was one. I don't know. It just follows it in the record. But the affidavit, I believe, was filed in July, and the motion was filed in March and the affidavit shows a file stamp of July. So I don't know if it was attached. It's a separate document? Not attached to it? Well, it's a couple-month span of time. Okay. But my question is, again, in the motion to vacate the foreclosure and judicial sale, does the prayer for relief contain a request for a hearing, an evidentiary hearing? And one was a request made for an evidentiary hearing on the affidavits, if there was one ever made, other than the motion to reconsider. That's what I'm trying to find out. I don't see it in the record. It may be on the motion to reconsider, but is that late? I mean, shouldn't you ask for a hearing on the affidavits? As I stand right now, I don't know. The recall of the record indicates that whether a request was made by Mr. Cotton for an evidentiary hearing on the affidavits. So procedurally, then, there was this motion presented to vacate the judgment, and then you responded to that motion. Was there a hearing on the motion? There were arguments on the motion, yes. What arguments? At the arguments, did anybody say, wait, before we have argument, I want an evidentiary hearing? Did anyone ask for that? I'd have to refresh and review the transcript. I'm sorry. I can do that and supplement the brief, but I don't know as I stand right now. Okay. Any questions? No, I don't. Thank you, Counsel. Okay, thank you. Thank you. Mr. Ring, brief rebuttal, please. In a service by publication, there is no presumption of service like in a personal service case. So it's incumbent upon the plaintiff seeking that relief from the court that they have that strict compliance with the statute for that type of service. And those were all the cases are. The more correct case is the new case that came out, and that was the Brewer case. And, again, that case was talking about the specificity of the affidavits by the process service. That case just came out about a month ago in May. It was a published decision. And they were talking about the specific affidavits in that case that they didn't really discuss how they actually went out to serve the defendant or what records they actually looked at for their due diligence and their due inquiry. And here nothing was done either. And so to have the same similar result from that case that just came out about a month ago from this court in a published decision, the affidavits here are much, much less specific than the affidavits contained in that case that just came out about three years ago, three weeks ago. Was there a hearing on the affidavits in those cases? No, I don't think there was a hearing at all in that case. The court decided to vacate that without even having a hearing because, again, it's their requirement to show the specificity of the service attempts to get that statute serviced by publication. And they have to rise to that level. In that case, they also didn't comply with Local Rule 7.3, which you have to have a more thorough affidavit. And the local rules require that here in Cook County, although we didn't discuss that in the briefs and it wasn't discussed in the lower court, this court can certainly look at that local rule to show the strict requirements of that rule to look at what is really must be contained in all the affidavits to get to even a point to have an evidentiary hearing. And they, the Citibank, did not even rise to that level in this particular case. Mr. Ring, can you respond to Justice Conner's question? I'm interested, regarding the timeliness of the request for the evidentiary hearing. I know in my motion to reconsider, it's in there, and that's on page 6 of my motion. I don't know what page it's on in the record, but it certainly, and I have the record. I think Justice Conner's question was a little bit more specific than that. It was prior to the motion for reconsideration, did anybody request an evidentiary hearing and was the affidavits that we've been talking so much about attached to any of the pleadings or a motion prior to the motion for reconsideration? I have the record, the transcripts here, and I don't have that answer. I can look at them quickly, but I don't think you have to have the magic words, we're demanding an evidentiary hearing and a prayer for relief. I mean, how would the judge know that you want an evidentiary hearing if you don't ask specifically for an evidentiary hearing? Well, when the judge sees conflicting affidavits, that's the role of the judge. He must decide when there's confliction in a summary judgment proceeding. He decides summary judgment if there's conflicting affidavits. I agree that judges have a lot of roles, but lawyers have roles too, and one of the roles of the lawyer is to point out to the judge when there is a point of dispute or conflict in the matter before the judge and request an evidentiary hearing. And I think our question goes to when was that done and was it done in a timely way? Well, even if Mr. Cardinal didn't ask for that in his papers or the argument that's contained in the record doesn't show that, it's my position that even the motion to reconsider, and again, the motion to reconsider is showing the errors the court made, and you can, if the court sees that, that, hey, I didn't give an evidentiary hearing, you know, I should have, we put that in my motion to reconsider. At that point, the judge reading my motion, which he denied, could have said, yeah, you're right, Mr. Ring, I should give an evidentiary hearing. So you're saying that the obvious conflicts in the affidavit should have been enough to trigger an evidentiary hearing by the judge? Certainly. You get the pictures, the conflicting affidavits, the lack of specificity in their affidavits, and looking at the Brewer case that just came out about a month ago before this court. Well, the judge didn't have the benefit of the Brewer case. He only had what he had before him. So that's what you are, you have to argue before us. Based on what he had before him at that time, he should have granted an evidentiary hearing because? Well, the equity in the Solo case was on point at that. It was still good law then, and it's been cited a number of times. You have the local rule that the foreclosure judge that's only hears all day, and that rule is specific to foreclosure cases. The rule 7.3 only says for foreclosure cases. The wording of that rule is taken right out of the equity in the Solo case, and so they didn't say in all cases, they said specifically mortgage foreclosure cases. So this judge sitting in that room where he hears thousands of foreclosure cases weekly, he should have been aware of that rule, and then seeing that the affidavits don't have the required specificity, ordered an evidentiary hearing. You require us in every case where there are differences in the affidavits, that the court must have an evidentiary hearing to respond to without any lawyers asking for it. I think that the judge's role is to look at that, but here again we ask for that in my motion to reconsider. And even if you look at it, well, the previous lawyer didn't ask for that, the judge can look at that and say, you know, you're right, there are conflictions in the affidavits and the evidence before us, I have to have an evidentiary hearing. But the judge has to determine, and that's what equity said, when there's a conflict of the information and a strict compliance with the statute. We don't have to do anything like in a personal service case, it's the opposite. But here it's they must comply with the statute, and they didn't. They didn't get to that level at all, even if they didn't file any affidavits. They didn't say they went to the courthouse. They didn't say they looked at his employment. They didn't say anything like that. The court could have looked at that. They could have said, hey, you went to a place ten times and you didn't ring a doorbell, there's no doorbell. We don't know if he knocked a little bit like that or if he knocked very loud. And being the size of the house, we don't know if the little knock they heard. We don't know anything like that. If he got out, there's a car. We know nothing about that from the affidavit, from the second affidavit. There's just not enough there, and the court should have saw that. And that's the gatekeeper of all the evidence, the court, and looking at the strict compliance with the statute. Thank you. Thank you very much, Mr. Green. Thank you both. This case will be taken under advisement, and this court is adjourned.